IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERICA ADEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>LIFE CARE CENTERS OF AMERICA, )<br>INC., )<br>)<br>Defendant. )<br>) | CIVIL ACTION<br><br>No. 05-2286-CM |

**MEMORANDUM AND ORDER**

Plaintiff Erica Aden, a former employee of defendant Life Care Centers of America, Inc., brings this action for sexual harassment and retaliatory discharge under 42 U.S.C. § 2000e, *et seq.* This matter is before the court on defendant's motion for summary judgment (Doc. 12).

**I.    FACTUAL BACKGROUND**[1]

Defendant owns Garden Terrace, a residential care facility in Overland Park, Kansas. On August 21, 2004, plaintiff began working at the facility as a Certified Nurse Aide. She generally worked two-double shifts on Saturdays and Sundays. Before working at Garden Terrace, plaintiff worked for defendant in Westminister, Colorado.

Terry Newbill worked at Garden Terrace in housekeeping and typically worked evenings, Thursday though Sunday. Sometime prior to October 3, 2004, Mr. Newbill began making sexual comments to plaintiff and inappropriately touching her. He pulled her shirt and tried to look down

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

it; pinned her against a door, kissed her, and asked her to kiss him back; commented about the shirt she was wearing under her smock; told her she was hot; and said he wanted to take her to bed. Although Mr. Newbill's actions made plaintiff uncomfortable, she kissed him on the cheek when he asked and did not tell him that she was uncomfortable or report the incidents to management. On October 3, 2004, Mr. Newbill rubbed a towel on plaintiff's neck while she was feeding a resident in the dining room. Plaintiff left the dining room to lay the resident down. Mr. Newbill came into the room with a blanket. He wrapped the blanket around plaintiff and "pressed his genitals against her buttocks." Complaint ¶ 12. Immediately before harassing plaintiff, Mr. Newbill had inappropriately touched another co-worker, Jessica Nichols-Villalpando. That night, plaintiff and Ms. Nichols-Villalpando were upset and discussed what they should do about the incidents. The next morning, October 4, 2004, Ms. Nichols-Villalpando reported the incidents to Ms. Rinas, the Director of Nursing, who reported it to her supervisor, Debbie Beihl, the Executive Director of Garden Terrace. That same day, plaintiff spoke to Ms. Rinas about the incident on the telephone and also reported it to the Overland Park Police.

On October 7, 2004, Ms. Biehl suspended Mr. Newbill for four days, October 7th through October 10th, pending an investigation into the allegations. At some point, plaintiff informed defendant that she would not work the weekend of October 9th and 10th. On October 8, 2004, she and Ms. Nichols-Villalpando attempted to meet with Ms. Biehl, but Ms. Biehl was too busy. Neither plaintiff nor Ms. Nichols-Villalpando came to work the weekend of October 9th and 10th. That weekend, Ms. Biehl talked to the weekend staff about the allegations against Mr. Newbill. On October 11, 2004, Ms. Biehl reported the status of her investigation to Trent Tolbert, the Regional Vice President.

On October 13, 2004, plaintiff and Ms. Nichols-Villalpando met with Ms. Rinas, Ms. Biehl and Mills Clark, Mr. Newbill's supervisor, to discuss the allegations against Mr. Newbill. During the meeting, Ms. Biehl told plaintiff and Ms. Nichols-Villalpando that they would not be allowed to work together, that Mr. Newbill would remain employed at the facility, and that they would have to continue working with him. On October 14, 2004, plaintiff left a note for Ms. Rinas stating that she was not going to return to work on October 16th and 17th. After receiving the note, Ms. Rinas called plaintiff and told her that if she did not come into work she would be considered self-terminated. During the conversation, Ms. Rinas also told plaintiff that Mr. Newbill would still be working there. Plaintiff replied that she was still uncomfortable working with him. Plaintiff did not work on October 16th and 17th. Ms. Biehl and Ms. Rinas considered plaintiff self-terminated because she did not work that weekend; however, Ms. Rinas's conclusion that plaintiff had self-terminated violated defendant's policies because plaintiff had provided more than two-hours notice. Mr. Newbill did not work at the facility after October 3, 2004, and was terminated on October 21, 2004, as a result of Ms. Biehl's investigation. Plaintiff was not aware of Mr. Newbill's employment status throughout the investigation.

**II.  STANDARDS FOR JUDGMENT**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.  DISCUSSION**

### A. Plaintiff's Sexual Harassment Claim Under Title VII

To prevail on her claim, plaintiff must establish that her work environment was hostile and that defendant is liable for the hostile environment. *Adler*, 144 F.3d at 672-73. In its motion, defendant does not contest that plaintiff was subjected to a hostile work environment, but argues that it is not liable for creating the environment.

An employer is liable for a hostile work environment when it had actual or constructive knowledge of the hostile work environment and did not adequately respond to notice of the harassment. *Ford v. West*, 222 F.3d 767, 775-6 (10th Cir. 2000); *Adler*, 144 F.3d at 673. Constructive knowledge exists when the harassment is so pervasive that the employer should have known about it. *Adler*, 144 F.3d at 675. The harassment must be "'so egregious, numerous, and concentrated as to add up to a campaign of harassment.'" *Id.* (*citing Baker v. Weyerhaeuser Co.*, 903 F.2d. 1342, 1346 (10th Cir. 1990)).

Plaintiff argues that defendant had constructive knowledge of the hostile work environment for a variety of reasons, including because Mr. Newbill's sexual harassment constituted a campaign of harassment. In the three months that she worked at Garden Terrace, Mr. Newbill was inappropriate towards her on at least five occasions. He pulled her shirt trying to look down it; pinned her against a door, kissed her, and asked her to kiss him back; commented about the shirt she was wearing under her smock; told her she was hot; and said he wanted to take her to bed. Then, on October 3, 2004, he rubbed her neck with a towel and later wrapped a blanket around her and "pressed his genitals against her buttocks." The court finds that a factfinder could conclude that these incidents were so egregious and numerous that they constituted a campaign of harassment and that defendant had constructive knowledge of the hostile work environment.

In addition to defendant's constructive knowledge, the court must consider whether

-4-

defendant's "remedial and preventative action was 'reasonably calculated to end the harassment.'" *Adler*, 144 F.3d at 676. "A stoppage of the harassment shows effectiveness, which in turn evidences such reasonable calculation." Prompt investigation of the allegations and scheduling changes are also reasonable preventative actions. *Id.*

Defendant suspended Mr. Newbill on October 7, 2004, and began investigating the alleged harassment on October 9, 2004, when Ms. Biehl spoke with the weekend staff. Because a factfinder could conclude that defendant had constructive knowledge prior to October 2004, the court finds that there is a genuine issue of material fact regarding whether defendant's actions were prompt and reasonably calculated to end the harassment. Defendant's motion for summary judgment on plaintiff's sexual harassment claim under Title VII is denied.

### B.     Plaintiff's Retaliatory Discharge Claim Under Title VII

Plaintiff next alleges that she was terminated in retaliation for reporting the alleged sexual harassment. Under the burden-shifting framework of *McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201-02 (10th Cir. 2006). Once the plaintiff presents a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action. *Id*. If the defendant meets its burden, the plaintiff must demonstrate that the defendant's proffered reason is merely pretextual. *Id.*

For plaintiff to establish a prima facie case of retaliation, she must show: (1) that she engaged in protected opposition to discrimination; (2) "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'"; and (3) that a causal connection existed between the protected activity and the materially adverse action. *Id.* at

1202 n.2 (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006)).

Defendant argues that it did not take adverse action against plaintiff and that there is no causal connection between the alleged adverse action and the protective activity. Defendant contends that it is not responsible for plaintiff's termination because she self-terminated by failing to come to work Saturday, October 16th and Sunday, October 17th in violation of defendant's attendance policy. The court disagrees. Ms. Rinas spoke with plaintiff on October 14, 2004, and told her that if she did not come to work that weekend, she would be considered self-terminated. During the conversation, Ms. Rinas also told plaintiff that Mr. Newbill would still be working there. Plaintiff replied that she was still uncomfortable working with him. Plaintiff provided defendant with notice of her absence and told Ms. Rinas that she was not comfortable working while the harassment investigation was underway.

Defendant's decision that these circumstances equate to plaintiff abandoning her job constitutes an adverse employment action. Additionally, the two-week gap between the protected activity and the adverse action is sufficient to create an inference of causation based on timing alone. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (recognizing that a "one and one-half month period between protected activity and adverse action may, by itself, establish causation," but that "a three-month period, standing alone, is insufficient to establish causation."). The court finds that plaintiff has satisfied the requirements of a prima facie case of retaliation.

The court also finds that defendant has met its burden to articulate a nondiscriminatory reason for plaintiff's termination—defendant believes that plaintiff self-terminated by breaching defendant's attendance policy. The court next considers whether a genuine issue of material fact exists regarding defendant's proffered reason for plaintiff's termination. Plaintiff may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or

-6-

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)). This is typically done by (1) showing defendant's legitimate reason is false, (2) showing that "the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) [showing] that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs.*, *Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted).

Defendant knew that plaintiff was not coming to work because she feared being sexually harassed; yet, defendant concluded that plaintiff self-terminated. Additionally, in her deposition, Ms. Rinas stated that she acted contrary to defendant's policy by determining that plaintiff had self-terminated. After reviewing the evidence, the court finds that there is a genuine issue of material fact regarding whether plaintiff breached the attendance policy and whether defendant complied with its own policies. The court, therefore, denies defendant's motion for summary judgment on plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 57) is denied.

Dated this 3rd day of January 2007, at Kansas City, Kansas.

                                         s/ Carlos Murguia
                                         **CARLOS MURGUIA**
                                         **United States District Judge**